IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


Pamela Hardman,

        Plaintiff,


        vs.                           Case No. 13-2535-JTM


Johnson County Community College,
    *et al.*,

        Defendants.


MEMORANDUM AND ORDER


Plaintiff Pamela Hardman attended Johnson County Community College (JCCC) until May 10, 2013, when she received a one year suspension after making comments which some employees and students found threatening. She has brought the present action alleging deprivation of due process by the College and by various officers and agents of the College. Hardman alleges she received no written notice of the charges, and was not permitted to attend the hearing accompanied by an attorney. A centerpiece of Hardman's *pro se* case is a decision in a separate case, *Byrnes v. Johnson County Community College*, No. 10-2690-EFM, 2011 WL 166715 (D. Kan. Jan. 19, 2011). Thus, Hardman alleges that

"Plaintiff's advocate Mary Green reminded Defendant [Mary] Nero [JCCC's in-house counsel] of the case of *Byrnes v JCCC* and the issue of failure of due process ruled on by U.S. District Court Judge Eric Melgren in 2011." (Dkt. 1, at 7).

At the same time she filed her Complaint, Hardman also requested a temporary restraining order which would permit her to attend fall classes at the College. (Dkt. 4). This motion also relied in particular on *Byrnes*. The court denied this motion, finding that injunctive relief was not warranted in light of the facts of the case, including the potential danger to public safety, as reflected in the original suspension for making threatening comments. (Dkt. 5). In addition, the court also specifically noted that "the *Byrnes* case has no application here, as that case involved a different plaintiff asserting different factual claims against JCCC, and claims of due process deprivation are inherently fact-intensive." (*Id.*)

The defendants have moved to dismiss the action, arguing that Hardman has failed to establish any violation of procedural or substantive due process

*Factual Background*

Hardman's Complaint raises several factual contentions. From those allegations and the attached exhibits, the following sequence of events can be established. The court notes that in her response to the motion to dismiss, Hardman does not challenge any aspect of this factual narrative.

On or around September 19, Nero forwarded to Hardman a copy of a letter by Dr.

Paul Kyle. Dr Kyle's letter (which is attached as an exhibit to plaintiff's Complaint[1]) stated:

> As set forth in my letter dated May 10, 2013, you have been temporarily suspended from Johnson County Community College as a result of your repeated disruptive behavior in violation of the Student Code of Conduct—319.01, Section 10. More specifically, several Hospitality & Culinary employees raised concerns related to the erratic voice messages left by you on May 3, 2013 and May 9, 2013. In these lengthy messages, you made numerous false reports against JCCC employees, raised your voice several times and made statements that were perceived by College personnel as threatening, such as "the mud's going to hit the fan," and "I'm going to have to do whatever I have to do!" ....
>
> You have a history of exhibiting hostility, scaring, frightening and making JCCC students and employees uncomfortable. As a result, you have received verbal and written warnings, been required on several occasions to meet with the Vice President or Dean of Student Services, and been removed from certain campus areas for the safety of the JCCC community.
>
> Your behavior in May 2013 was referred to the College's Behavior Intervention Team (BIT), a group charged with threat assessment and violence prevention on campus. In light of your behavioral history at the College, which has caused employees and students to fear for their safety, the BIT felt that the appropriate action for protecting safety and security on campus was to issue an emergency suspension. Our office made multiple attempts to reach out to you via phone and email to discuss the circumstances surrounding your suspension, but the attempts were unsuccessful....

Hardman could have appealed the May suspension when it was first issued, but did

not do so. The September 2013 letter offered her an additional opportunity to appeal, by

sending a letter to JCCC Executive Director of Human Resources, Becky Centlivre. At the

same time she forwarded Dr. Kyle's September letter, Nero also explained Hardman's

---

[1] The court may consider documents that are attached to a complaint. *See GFF Corp. v. Associated Wholesale Grocers*, Inc., 130 F.3d 1381, 1384-85 (10th Cir. 1997).

appeal rights.

Hardman and her "advocate" Green met with Centlivre on October 8, 2013.[2] Hardman read a statement that Green had prepared for her, which references Hardman's prior charges of "racial slurs and discrimination" by the Vice President of Student Services, Dr. Dennis Day, including instances in which Day had allegedly "called me white trash and alleged that I had defrauded welfare in three states." (Dkt. 1, Exh. F). Hardman further denied that she had slapped Dr. Days's employee assistant, and that asserted she had been slapped by Day. She alleges in her statement that she tried to file criminal charges over the matter, but was told by the Overland Park Police Department that "a person like myself was not allowed to make accusations about a person like him." (*Id.*) She alleges that she was also stalked and insulted by "the same black student assistant." (*Id.*) She acknowledged leaving the voice mails stating "The mud will hit the fan" and "I am going to have to do what I have to do," but that she was referring to legal action rather than violence. (*Id.*)

According to the Complaint, JCCC in-house counsel Tanya Wilson called Green on October 15, 2013, and stated that Centlivre was "not removing the suspension" and asked to question Hardman by phone. *Id.* Hardman alleges that Wilson said she was Nero's supervisor and that Nero "had no authority to speak" on behalf of JCCC.

Hardman filed this lawsuit two days later.

_____

[2] The defendants state that they can find no record indicating that Green is admitted to practice law in the State of Kansas.

*Conclusions of Law*

The defendants first argue that Hardman's procedural due process claims should be dismissed, to the extent she claims deprivation of a protected liberty interest based on alleged injury to reputation. The defendants stress there is no allegation that the September letter actually harmed her reputation. That is, the letter was disseminated only to agents of the defendant JCCC, which cannot constitute publication. *See Harris v. Blake*, 798 F.2d 419, 422 (10th Cir. 1986).

Further, the defendants contend, she was given an appropriate level of process in light of the circumstances of the case. *See Salehpoor v. Shahinpoor*, 358 F.3d 782 (10th Cir. 2004) (recognizing accelerated process in cases of allegedly disruptive or violent students).

Here, JCCC sent written notice to Hardman in May at the time of the suspension by certified mail. After she denied receiving a copy of this notice, a further communication was sent in September. Hardman did not appeal the original suspension in May. She was permitted to present an appeal in September, and the letter from Nero explained her rights regarding the appeal. After filing the appeal, Hardman did in fact meet with Ms. Centlivre.

Under the JCCC Operating Procedures, which are referenced by Hardman in her Complaint, such an appeal is a two-step process, in which the appellant first has a relatively informal "administrative meeting" with a designated administrator. After this meeting, the administrator delivers a written decision, and after this decision the student may then request a formal "appeal hearing" before a five-person panel, with a right to counsel, present evidence, and testify.

Here, the plaintiff short-circuited this process by appearing with her putative

counsel Green on October 5, 2013, and attempting to then conduct an adversarial hearing.

Hardman then instituted the present action prior to any written decision by Ms. Centlivre.

"A party cannot create a due process claim by ignoring established procedures." *Santana*

*v. City of Tulsa*, 359 F.3d 1241, 1244 (10th Cir. 2004).

The defendants contend that Hardman's substantive due process claim is flawed,

because such claims are limited to rare cases in which government action has violated a

"fundamental right," or action which "shocks the conscience." Hardman cannot show such

a deprivation here because, "[i]n the context of school discipline, the limited protection

offered by substantive due process reinforces the principle that federal courts are not in the

business of setting aside every erroneous decision made by school administrators." *See*

*Gauder v. Leckrone*, 366 F. Supp.2d 780, 787 (W.D. Wis. 2005).

Specifically, Hardman has failed to demonstrate the existence of the required

fundamental right, either in her generalized reputation or in continued post-secondary

education. *See, respectively Zutz v. Nelson*, 601 F.3d 842, (8th Cir. 2010) ("no fundamental

right to one's own reputation"); *Burch v. Jordan*, No. 07-326, 2010 WL 539156, *22 (D. Kan.

2010) ("education is not considered a fundamental right"). Nor is there any indication of

actions by the defendants which would shock the conscience. Hardman concedes leaving

the phone messages, and does not deny they were delivered in a loud and agitated state.

The temporary suspension of Harman under these circumstances is not so divorced from

reality as to shock the conscience.

The defendants apply the same reasoning to the counts in Hardman's Complaint which relate to the actions of the Overland Park Police Department. They further note that the police department is an independent agency and is not a defendant in the action. With respect to the contract claim included in the Complaint, the defendants argue that the plaintiff has not alleged that JCCC waived its explicit policy authorizing the suspension of disruptive students. Finally, the individual defendants contend that they are entitled to qualified immunity.

Hardman's only response to the defendants' motion is to again invoke the *Byrnes* case, stating that "my complaint was based on the complaint in the Brynes [sic] v. J.C.C.C. because I got the Brynes [sic] complaint from Miss Brynes's [sic] attorney and the Defendants know that and that they settled the Brynes [sic] case after the Judge ruled in favor of Miss Brynes [sic]." (Dkt. 29, at 1). She attached a copy of the *Byrnes* decision, and asserts in purely conclusory fashion that *Byrnes* establishes that she has a liberty interest in her education, that the court cannot grant qualified immunity "without a hearing," and that JCCC "does not have legal due process," and thus she need not "go through these processes to file a case in court." (*Id.*)

Of course, as already noted, this court denied Hardman's motion for a temporary injunction because *Brynes* has "no application here, as that case involved a different plaintiff asserting different factual claims against JCCC, and claims of due process deprivation are inherently fact-intensive."

This decision was correct. In *Brynes*, the evidence showed that JCCC had disciplined four nursing students for violating school policy by publishing certain medical photographs on Facebook. In particular, the court noted credible evidence that a JCCC supervisor had expressly permitted such publication, and that JCCC itself had abandoned the appeals process, and effectively determined the students were guilty when an administrator "publicly announced their guilt in a meeting with the entire nursing school." 2011 WL 166715, at *3. The court also rejected the defendant's qualified immunity argument, because the defense was offered in opposition to the students' request for an injunction, and the immunity applies to claims for damages. In dicta, the court further observed that the defendants' actions could not be objectively reasonable given the explicit permission which had been given to allow publication of the photographs.

Here, there is no allegation that Hardman was authorized by JCCC to make disruptive or threatening messages. There is no allegation that any of the defendants made any public communication of the charges against Hardman prior to the conclusion of the complaint process. To the contrary, as noted above, it was Hardman who short-circuited the appeal procedure by filing this action without seeking a final resolution of her appeal.

In the copy of *Byrnes* which Hardman attaches to her Response, she underlines the passage in which the court acknowledged that exhaustion of remedies is not a prerequisite to a Section 1983 action for deprivation of due process. *Id.* at *3 n. 12 (*citing Patsy v. Board of Regents*, 457 U.S. 496 (1982)). But the point here is not that the present action is barred for a lack of exhaustion, but whether the process offered by JCCC and abandoned by Hardman

was constitutionally adequate.

Thus, in *Flagship Lake County Dev. No. 5 v. City of Mascotte*, __ Fed.Appx. ___, 2014 WL 96104, *4 (11th Cir. March 13, 2014) the court rejected the plaintiff's argument that exhaustion is not required in due process actions under Section 1983 as irrelevant:

> That concept is true; but it is also inapposite here. As this Court explained in *Cotton* [*v. Jackson*, 216 F.3d 1328, 1330–31 (11th Cir.2000)], the rule that a section 1983 claim is not stated unless inadequate state procedures exist to remedy an alleged procedural deprivation "is not an exhaustion requirement." 216 F.3d at 1331 & n. 2. Instead, it is "a recognition that procedural due process violations do not even exist unless no adequate state remedies are available." *Id.* at 1331 n. 2. In other words, the unavailability of adequate remedies is an element of a procedural due process claim—as opposed to an exhaustion requirement.

Here, Hardman makes no attempt to show how the procedure offered by JCCC was deficient in any substantial respect. There is no allegation that the defendants prejudged the case, as in *Byrnes*. The defendants are entitled to dismissal of the action because Hardman was presented with the process to which she was entitled.

Finally, qualified immunity is appropriately asserted in response to the Complaint's request for actual and punitive damages (Dkt. 1 at 17). Hardman has wholly failed to make *any* showing how the specific actions of the individual defendants violated a particular constitutional right which was clearly established at the time of the alleged misconduct. *See Pearson v. Callahan*, 555, U.S. 223, 231 (2009).

Further, because the plaintiff has made no effort to suggest how the deficiencies in her complaint might be remedied through amendment, dismissal with prejudice is appropriate. *See Khan v. White*, 35 F3d.Appx. 849 (10th Cir. 2002).

IT IS ACCORDINGLY ORDERED this 10th day of April, 2014, that the defendants'

Motion to Dismiss (Dkt. 19) is hereby granted.

 s/ J. Thomas Marten
J. THOMAS MARTEN, JUDGE